IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF UTAH

| | |
|---|---|
| DENISE M.,<br><br>    Plaintiff,<br><br>v.<br><br>CIGNA HEALTH AND LIFE INSURANCE COMPANY *et al.*,<br><br>    Defendants. | **MEMORANDUM DECISION AND ORDER DENYING DEFENDANTS' MOTION TO DISMISS PLAINTIFF'S SECOND CAUSE OF ACTION**<br><br>Case No. 2:19-cv-764-JNP-DAO<br><br>District Judge Jill N. Parrish |

Before the court is a Partial Motion to Dismiss filed by Defendants CIGNA Health and Life Insurance Company ("CIGNA") and the Trust for Public Land Healthcare Benefit Plan (the "Plan"), (collectively, "Defendants"). [Docket 11]. Defendants' motion is DENIED.

**BACKGROUND**

Denise M. ("Denise" or "Plaintiff") and D.G., a minor, are natural persons residing in Wisconsin. Denise maintained health benefits through a self-funded employee welfare benefits plan (the "Plan"). CIGNA served as the third-party administrator for the Plan at all times relevant to this case. Denise was, and remains, a participant in the Plan. Similarly, D.G. was, and remains, a beneficiary of the Plan.

D.G. struggled with depression, anxiety, low self-esteem, anger management, aggression, suicidal ideation, and impairments in cognitive functioning. D.G. was admitted to Aspiro Adventure ("Aspiro") on April 28, 2016 after other hospitalizations and interventions had failed. Aspiro is a licensed treatment facility located in Utah. It provides sub-acute inpatient treatment to

adolescents with mental health, behavioral, and substance abuse problems. D.G. completed treatment at Aspiro on August 23, 2016.

CIGNA denied clams for payment of D.G.'s medical expenses in connection with this treatment at Aspiro under code "XSW," which provides that the service for which payment is sought is not a covered expense as defined by the Plan. Denise submitted a level one appeal of the denial of benefits. She asserted that no limitations in the Plan excluded treatment at Aspiro, a duly licensed organization by the State of Utah Department of Human Services that has been accredited by multiple entities and meets Utah's requirements for outdoor behavior health programs. She asked that, in the event that the denial be upheld, CIGNA provide a copy of all documents under which the Plan was operated.

Denise's appeal was denied, and the denial of benefits was upheld. The denial stated that the Plan did not cover services rendered by an "unlicensed hospital." It further stated that all providers, including facilities, must be licensed in accordance with the laws of the appropriate legally authorized agency and acting within the scope of such license. CIGNA did not provide the requested documentation.

Denise submitted a second appeal, reiterating that treatment at Aspiro was a covered service under the Plan, that it was not a hospital, and that it was a duly licensed facility by the State of Utah. The denial was again upheld based upon the same reasons provided in the denial of Denise's first appeal.

Denise now brings suit individually and on behalf of D.G. She asserts that the denial of benefits for D.G.'s treatment was a breach of contract. Denise also alleges that the Plan violates The Mental Health Parity and Addiction Equity Act of 2008 (the "Parity Act"), 29 U.S.C. § 1185a,

as it imposes more stringent requirements on mental health and substance abuse facilities than it does on analogous medical and surgical treatment facilities.

## LEGAL STANDARD

Defendants move to dismiss Denise's second cause of action under Federal Rule of Civil Procedure 12(b)(6). "To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). "The burden is on the plaintiff to frame a 'complaint with enough factual matter (taken as true) to suggest' that he or she is entitled to relief." *Robbins v. Oklahoma ex rel. Dep't of Human Servs.*, 519 F.3d 1242, 1247 (10th Cir. 2008) (citing *Twombly*, 550 U.S. at 556). "Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Iqbal*, 556 U.S. at 678 (citation omitted). "[O]nce a claim has been stated adequately, it may be supported by showing any set of facts consistent with the allegations in the complaint." *Twombly*, 550 U.S. at 563 (citation omitted).

## ANALYSIS

Defendants move this court to dismiss Denise's second cause of action brought under the Parity Act. They first allege that Denise has failed to state a claim for relief under the Parity Act. Alternatively, they argue that, if Denise has stated a claim for relief, that claim is duplicative of her first cause of action alleging wrongful denial of benefits under the Plan.

## I.      ERISA and the Parity Act

"ERISA regulates employee pension and welfare benefit plans." *Millsap v. McDonnell Douglas Corp.*, 368 F.3d 1246, 1249 (10th Cir. 2004) (citations omitted). Congress enacted it "to promote the interests of employees and their beneficiaries in employee benefit plans." *Id.* at 1250 (quoting *Ingersoll–Rand Co. v. McClendon*, 498 U.S. 133, 137 (1990)). In designing ERISA,

Congress sought both "to offer employees enhanced protection for their benefits," and to avoid "creat[ing] a system that is so complex that administrative costs, or litigation expenses, unduly discourage employers from offering welfare benefit plans in the first place." *Varity Corp. v. Howe*, 516 U.S. 489, 497 (1996) (citation omitted).

A. ERISA's Enforcement Scheme

Section 502(a), codified at 29 U.S.C. § 1132(a), is ERISA's enforcement scheme "consist[ing] of several carefully integrated provisions." *Millsap*, 368 F.3d at 1250 (citation omitted). Relevant to this motion are Sections 502(a)(1)(B) and 502(a)(3).

Section 502(a)(1)(B) authorizes a plan participant or beneficiary to bring suit "to recover benefits due to him under the terms of his plan, to enforce his rights under the terms of the plan, or to clarify his rights to future benefits under the terms of the plan." 29 U.S.C. § 1132(a)(1)(B). Section 502(a)(3) authorizes a plan participant, beneficiary, or fiduciary "(A) to enjoin any act or practice which violates any provision of [Title I of ERISA] or the terms of the plan, or (B) to obtain other appropriate equitable relief (i) to redress such violations or (ii) to enforce any provisions of [Title I of ERISA] or the terms of the plan." 29 U.S.C. § 1132(a)(3).

Taken together, "ERISA's remedial provisions empower plan participants or beneficiaries to pursue two types of remedies: one for monetary relief seeking to 'recover benefits due' under the terms of their insurance plan, and another 'to obtain other appropriate equitable relief' for violations of the plan or other ERISA statutory rights." *Christine S. v. Blue Cross Blue Shield of New Mexico*, 428 F. Supp. 3d 1209, 1218–19 (D. Utah 2019) (quoting 29 U.S.C. § 1132(a)(1)(B), (a)(3)). Thus, where neither Section 502(a)(1)(B) nor any other subsection of Section 502 adequately remedies an injury caused by an ERISA violation, Section 502(a)(3) acts "as a safety net." *See Varity*, 516 U.S. at 512.

4

B.        The Mental Health Parity and Addiction Equity Act

The Parity Act, codified at 29 U.S.C. § 1185a, is an amendment to ERISA. It is designed "to end discrimination in the provision of insurance coverage for mental health and substance use disorders as compared to coverage for medical and surgical conditions in employer-sponsored group health plans." *M.S. v. Premera Blue Cross*, No. 19-CV-199, 2020 WL 1692820, at *3 (D. Utah Apr. 7, 2020) (quoting *Am. Psychiatric Ass'n v. Anthem Health Plans, Inc.*, 821 F.3d 352, 356 (2d Cir. 2016)).

Broadly, the Parity Act requires that "insurance plans providing for 'both medical and surgical benefits and mental health or substance use disorder benefits' must not impose more coverage restrictions on the latter than [they] impose[] on the former." *Christine S.*, 428 F. Supp. 3d at 1219 (quoting 29 U.S.C. § 1185a(a)(3)(A)). Relevant to this case, it "prohibits insurers from imposing 'treatment limitations' on mental health or substance abuse claims that are more stringent than the treatment limitations imposed on medical or surgical claims." *M.S.*, 2020 WL 1692820, at *3 (citation omitted).

Treatment limitations can take two forms: quantitative and nonquantitative. Quantitative treatment limitations are expressed numerically, such as a limit of fifty outpatient visits per year, while nonquantitative treatment limitations "otherwise limit the scope or duration of benefits for treatment under a plan or coverage." 29 C.F.R. § 2590.712(a). Nonquantitative treatment limitations on mental health benefits include, for example, "[m]edical management standards limiting or excluding benefits based on medical necessity or medical appropriateness" and "[r]estrictions based on geographic location, facility type, provider specialty, and other criteria that limit the scope or duration of benefits for services provided under the plan or coverage." 29 C.F.R. § 2590.712(c)(4)(ii)(A), (H). "[A]ll 'processes, strategies, evidentiary standards, or other factors

used in applying' non-quantitative treatment limitations are subject to the statute's parity

requirements." *Christine S.*, 428 F. Supp. 3d at 1219 (quoting 29 C.F.R. § 2590.712(c)(4)(i)).

Plaintiffs can allege a Parity Act violation through a facial challenge to a benefits plan's

written requirements or through an as-applied challenge to the provider's implementation of the

plan in practice. *David S. v. United Healthcare Ins. Co.*, No. 18-CV-803, 2019 WL 4393341, at

*3 (D. Utah Sept. 13, 2019).

## II.   Sufficiency of Plaintiff's Pleadings

Defendants argue that this court must dismiss Denise's Parity Act cause of action because

she has failed to plead sufficient facts to support her claim. The court disagrees and concludes that

Denise has sufficiently pleaded a Parity Act violation.

### A.  Parity Act Pleading Standard

Due to the lack of Tenth Circuit guidance on Parity Act pleading standards, "there is no

clear law on what is required to state a claim for a Parity Act violation." *Michael D. v. Anthem

Health Plans of Kentucky, Inc.*, 369 F. Supp. 3d 1159, 1174 (D. Utah 2019). However, this court

recently identified the prevailing pleading standard for Parity Act claims, which requires that

plaintiffs plead:

> (1) the relevant group health plan is subject to the Parity Act; (2) the plan provides
> both medical/surgical benefits and mental health or substance use disorder benefits;
> (3) the plan includes a treatment limitation for mental health or substance use
> disorder benefits that is more restrictive than medical/surgical benefits; and (4) the
> mental health or substance use disorder benefit being limited is in the same
> classification as the medical/surgical benefit to which it is being compared.

*Id.* Generally, the third and fourth prongs of the prevailing standard present a more substantial

pleading challenge for parties than the first two prongs. Thus, in most cases, this standard can be

distilled into a two-part test, requiring that a plaintiff "allege a medical or surgical analogue that

the plan treats differently than the disputed mental health or substance abuse services." *M.S.*, 2020 WL 1692820, at *4 (citation omitted).

Defendants in this case assert Denise has not pleaded an analogous service. They also assert that Denise has failed to plead sufficient facts to allege that mental health and substance abuse treatment are treated differently than their medical and surgical treatment analogues. Neither of these arguments warrants dismissal at this stage.

### B.    Plaintiff Identifies Analogous Treatment

Denise's complaint expressly identifies analogous medical and surgical treatment. Specifically, the complaint compares the treatment provided by Aspiro to skilled nursing and rehabilitation facilities. Thus, Defendants' contention that Denise identifies only "sub-acute inpatient treatment for medical or surgical conditions" as analogous treatment is plainly false. This argument is meritless.

### C.    Plaintiff Pleads Sufficient Facts to Survive a Motion to Dismiss

Next, Defendants assert that Denise's Parity Act claim must be dismissed because Denise has failed to allege sufficient facts to plausibly suggest that the Plan violates the Parity Act on its face or in application. Upon review of the complaint, the court concludes that Denise plausibly pleads that the Plan and CIGNA, by the terms of the Plan or in application, require sub-acute mental health and substance abuse treatment facilities to meet more stringent licensing requirements than they require of analogous medical and surgical treatment facilities.

In support of her claim, Denise asserts that Aspiro is a licensed treatment facility in Utah providing sub-acute inpatient treatment to adolescents with mental health, behavioral, and substance abuse problems and that payment for D.G.'s treatment at Aspiro was denied by CIGNA as an uncovered expense. She further asserts that CIGNA justified the denial because the "covered benefits [did] not include coverage for services rendered by an unlicensed hospital" and the Plan

requires all providers, including facilities, to be licensed in accordance with the laws of the appropriate legally authorized agency and acting within such license's scope.

Denise argues that the licensing requirements imposed on Aspiro are in excess of the licensing requirements imposed by the State of Utah. She alleges that this requirement is imposed by the terms of the Plan. In the alternative, she asserts that the Plan provisions do not require that mental health and substance abuse facilities obtain additional licensing, but that CIGNA imposes such additional requirements in practice.

Denise also alleges that the Plan covers other intermediate level medical or surgical facilities, such as skilled nursing and physical rehabilitation facilities. She alleges that neither the Plan nor CIGNA requires these facilities to obtain accreditation beyond existing state-level licensing requirements, either under the terms of the Plan or in practice.[1]

Thus, Denise sufficiently pleads that the Plan and CIGNA require sub-acute mental health and substance abuse treatment facilities like Aspiro to obtain licensing beyond what is required by the State of Utah, but do not impose those same requirements on analogous medical and surgical treatment facilities. Denise has pleaded a Parity Act claim.

---

[1] Defendants suggest that these allegations lack factual basis and are thus insufficient. But to state a plausible Parity Act claim, "a plaintiff need only plead as much of her prima facie case as possible based on the information in her possession." *Timothy D. v. Aetna Health and Life Ins. Co.*, No. 18CV753, 2019 WL 2493449, at *3 (D. Utah June 14, 2019) (citation omitted). Prior to this litigation, Denise requested further information about the Plan, including all governing documents, the Summary Plan Description, and the Plan's criteria for skilled nursing and rehabilitation facilities, but that information was not provided to her. Defendants now argue that, because Denise did not plead facts that are uniquely within Defendants' control, she has failed to state a claim on which relief can be granted. The court disagrees. Denise has sufficiently asserted that neither the Plan nor CIGNA requires skilled nursing and physical rehabilitation facilities to obtain licensing beyond that which is required under the law.

**III.      Duplicative Causes of Action Dispute**

Additionally, Defendants assert that Denise's Parity Act cause of action is duplicative of her claim for recovery of benefits under Section 502(a)(1)(B). In support, Defendants argue that the injuries alleged under both causes of action are not distinct. In addition, they assert that the remedies available under Section 502(a)(1)(B) "adequately remedy" the injury alleged under Denise's Parity Act cause of action. The court concludes that, at this stage of the litigation, dismissal of Denise's second cause of action as duplicative would be premature.

A.  There Is No Absolute Prohibition on Pleading Simultaneous Causes of Action

Two sections of ERISA's remedial scheme are at issue in this case, Sections 502(a)(1)(B) and 502(a)(3). The court first notes that there is no absolute prohibition on simultaneous causes of action brought under Sections 502(a)(1)(B) and 502(a)(3).[2] *See Varity*, 516 U.S. at 489 (addressing the trial court's grant of relief under both Sections 502(a)(1)(B) and 502(a)(3) and reversing the former, but making no mention of any issue with the plaintiffs litigating both causes of action simultaneously); *CIGNA Corp. v. Amara*, 563 U.S. 421, 438-40 (2011) (holding that Section 502(a)(1)(B) did not give the district court the authority to reform the plaintiff class's benefits plan, but that Section 502(a)(3) does authorize the equitable remedy of plan reformation).

To the contrary, Supreme Court precedent on this issue suggests that simultaneous causes of action are not inherently improper, as Section 502(a)(3) is intended to act as a "safety net" for plaintiffs whose injuries cannot be remedied by other provisions in Section 502. *See Varity*, 516 U.S. at 512. In the event that another provision of Section 502 adequately remedies a plaintiff's injury stemming from an alleged Parity Act violation, that plaintiff's Section 502(a)(3) cause of

---

[2] This court recently addressed this exact issue at length in *Christine S. v. Blue Cross Blue Shield of New Mexico*, 428 F. Supp. 3d 1209 (D. Utah 2019). For brevity, the court in this case summarizes the extensive legal analysis undertaken by the court in *Christine S.*

action will not be necessary. *See id.* at 515. However, in the event that another subsection of

Section 502 does not, in fact, provide adequate relief for the alleged Parity Act injury, permitting

parallel causes of actions pleaded in the alternative ensures that the plaintiff is able to make use of

the safety net created by Section 502(a)(3). This practice of alternative pleading is expressly

contemplated in Rule 8 of the Federal Rules of Civil Procedure. Fed. R. Civ. P. 8(d)(2) (permitting

parties to "set out 2 or more statements of a claim or defense alternatively or hypothetically, either

in a single count or defense or in separate ones").[3]

B. Dismissal of Plaintiff's Parity Act Cause of Action Would Be Improper at This Stage

While there is no absolute bar to simultaneous Section 502(a)(1)(B) and 502(a)(3) causes

of action, Denise is not entitled to simply repackage her first cause of action and bring it under

Section 502(a)(3).[4] Nor is she entitled to duplicative recovery. In short, "if [a] plaintiff may obtain

---

[3] This court has on multiple occasions reached this same conclusion. *See M.S.*, 2020 WL 1692820, at *6 (denying the defendants' motion to dismiss the plaintiffs' Section 502(a)(3) claim as duplicative of their Section 502(a)(1)(B) claim because the former was not "a mere repackaging" of the latter); *Candace B. v. Blue Cross and Blue Shield of Rhode Island*, No. 19-CV-39, 2020 WL 1474919, at *10 (D. Utah Mar. 26, 2020) (refusing to dismiss the plaintiffs' Section 502(a)(3) claim because it was "not clear that adequate relief exist[ed] under [Section 502(a)(1)(b)] for [the plaintiffs'] Parity Act claim" at the motion to dismiss stage); *Kurt W. v. United Healthcare Ins. Co.*, No. 19-CV-223, 2019 WL 6790823, at *6–7 (D. Utah Dec. 12, 2019) (concluding that the plaintiffs' request for payment of benefits did not wholly subsume their allegation that defendants had violated the Parity Act); *Christine S.*, 428 F. Supp. 3d at 1226 ("[T]he proper inquiry is whether the plaintiff's simultaneous ERISA claims are actually duplicative, meaning they seek to remedy the same injury with 'repackaged' causes of action."); *Michael W. v. United Behavioral Health*, 420 F. Supp. 3d 1207, 1228 n.9 (D. Utah 2019) (noting that *Varity*, rather than acting as a bar to simultaneous causes of action, recognizes that Section 502(a)(3) "may be used to pursue claims for equitable relief that are not available in other sections of ERISA").

[4] This issue arises because the standard of review employed by a court reviewing a plan administrator's denial of benefits is more deferential to the administrator under a Section 502(a)(1)(B) claim than it is under a Section 502(a)(3) claim. *Christine S.*, 428 F. Supp. 3d at 1227. Thus, courts seek to ensure that plaintiffs do not evade the more deferential review employed by courts under a Section 502(a)(1)(B) claim by simply repackaging their Section 502(a)(1)(B) claims as Section 502(a)(3) claims. *Id.* As will be addressed in greater detail, the Section 502(a)(3) claim in this case is not merely a repackaging of a Section 502(a)(1)(B) claim. That concern is therefore inapplicable here.

an adequate, make-whole remedy for her injury by pursuing a claim for monetary relief under

Section 502(a)(1)(B), she may not also seek additional equitable relief under Section 502(a)(3) for

the same injury." *Christine S.*, 428 F. Supp. 3d at 1226.

To determine whether a plaintiff's second cause of action should be dismissed at this stage

of the litigation, courts generally consider two questions:

> (1) Has the plaintiff alleged alternative theories of liability or suffered distinct
> injuries to justify pursuing simultaneous causes of action under both Section
> 502(a)(1)(B) and Section 502(a)(3)? (2) Do the monetary damages available for
> causes of action under Section 502(a)(1)(B) provide "adequate relief" such that the
> prevailing plaintiff can be made whole and completely remedy her injury or injuries
> without resorting to equitable relief?

*Id.*

Defendants assert that Denise's Parity Act cause of action is duplicative of her denial of

benefits claim. They argue that the injuries alleged are not distinct and that the monetary damages

available under Section 502(a)(1)(B) will provide "adequate relief" to remedy the alleged Parity

Act violation if Denise prevails on her first cause of action. Neither of these arguments warrants

dismissal at this stage of the litigation.

    1)  Plaintiff Pleads Alternative Theories of Liability

Defendants argue that the injury underlying Denise's second cause of action is not distinct

from the injury alleged underlying her first cause of action. Thus, they assert that the claims are

duplicative. The court disagrees and concludes that Denise has pleaded alternative theories of

liability "to justify pursuing simultaneous causes of action under both Section 502(a)(1)(B) and

Section 502(a)(3)." *Id.*

In support of their position, Defendants cite to *Thole v. U. S. Bank N.A*, 140 S. Ct. 1615

(2020). In *Thole*, participants in a defined-benefit retirement plan sued for alleged mismanagement

of the plan. *Id.* at 1618. Though the plaintiffs had not sustained any monetary damages, as they

11

received the same pre-defined monthly payments regardless of the plan's value, they asserted that the defendants had violated the ERISA duties of loyalty and prudence by poorly investing the plan's assets. *Id.* The Supreme Court concluded that the plaintiffs lacked Article III standing, as they lacked an injury-in-fact. Regardless of whether the plaintiffs prevailed in their case, they would continue to receive the same monthly payments. *Id.* at 1619. The alleged breach of the duties of loyalty and prudence was not "concrete" enough to confer standing. *Id.*

Defendants in this case assert that this same logic applies to Denise's second cause of action. They assert that a violation of the Parity Act alone is not an injury-in-fact and that the injury underlying the second cause of action must therefore be the same injury underlying the first cause of action: the denial of benefits.

Contrary to Defendants' assertion, *Thole* does not require this court to dismiss Denise's Parity Act claim at this stage of the litigation. While the Supreme Court in *Thole* concluded that the violation of a statutory right does not constitute an injury-in-fact giving rise to standing, this court's analysis centers on whether Denise's causes of action are duplicative.

The injury inquiry is not dispositive of the court's duplicative claims analysis. It is merely a tool to aid the court in determining whether a Section 502(a)(3) claim is a repackaged Section 502(a)(1)(B) claim. In reviewing Denise's causes of action, the court concludes that her causes of action are not duplicative. Rather, she "[has] alleged alternative theories of liability . . . to justify pursuing simultaneous causes of action," *Christine S.*, 428 F. Supp. 3d at 1226, as is authorized by Rule 8 of the Federal Rules of Civil Procedure, Fed. R. Civ. P. 8(d)(2).

To illustrate the alternative nature of these theories of liability, the court notes that Section 502(a)(1)(B) provides Denise with no relief for the alleged Parity Act violation. Pursuant to Section 502(a)(1)(B), a plaintiff may recover benefits due, enforce her rights, or clarify her rights

to future benefits only "under the terms of [her] plan," 29 U.S.C. § 1132(a)(1)(B). This section is limited in scope to violations of rights due under the Plan. It does not encompass remedies for violations of the Parity Act. *Varity*, 516 U.S. at 489 (authorizing plaintiffs' recovery for defendants' breach of fiduciary duty under Section 502(a)(3) and noting that recovery under Section 502(a)(1)(B) would be improper because the plaintiffs were no longer members of the benefit plan). Thus, Denise's second cause of action brought under Section 502(a)(3) is not merely a repackaged denial of benefits claim. To the contrary, it represents her only recourse for the alleged Parity Act violation. *See Joseph F. v. Sinclair Servs. Co.*, 158 F. Supp. 3d 1239, 1259 n.118 (D. Utah 2016) (noting that the plaintiffs were authorized to seek remedies for violations of the Parity Act through Section 502(a)(3)).

To adopt Defendants' position would be to prohibit all plaintiffs from pleading denial of benefits and Parity Act claims in parallel. As the court has already addressed, however, no such absolute prohibition exists. Thus, the first step of the aforementioned inquiry cuts in favor of Denise at this stage of the litigation. Denise's two causes of action present alternative theories of liability. The Supreme Court's conclusion in *Thole* that a violation of ERISA's duties of loyalty and prudence does not alone confer standing does not compel this court to dismiss Denise's Parity Act claim as duplicative.

> 2)   The Court Cannot Determine Whether Plaintiff's First Cause of Action Offers Adequate Relief at This Stage of the Litigation

Defendants further assert that Denise's Section 502(a)(1)(B) claim provides adequate relief to remedy the alleged Parity Act violation. They assert that the remedies requested under her Parity Act claim are either duplicative of the relief sought under Section 502(a)(1)(B) or are unavailable to her. The court concludes that it would be premature, at this stage of the litigation, to find that "the monetary damages available for causes of action under Section 502(a)(1)(B) provide

'adequate relief' such that the prevailing plaintiff can be made whole and completely remedy her injury or injuries without resorting to equitable relief." *Christine S.*, 428 F. Supp. 3d at 1226.

The prematurity of this determination becomes clear when the court considers the possibility that Denise may not recover at all under her first cause of action. In such a case, Denise would be precluded from recovering monetary damages under Section 502(a)(1)(B). That conclusion would not, however, prevent a finding that Defendants violated the Parity Act by imposing more stringent medical necessity criteria on mental health and substance abuse treatment and that Denise was injured by that violation. Denise's sole remedy in such a case would be through Section 502(a)(3). *See Christine S.*, 428 F. Supp. 3d at 1232–33 (noting that the district court in *Amara* initially granted relief under Section 502(a)(1)(B), but that the Supreme Court concluded that relief under Section 502(a)(1)(B) was improper and ruled that the plaintiffs could instead seek a remedy under Section 502(a)(3)). Alternatively, Denise may recover monetary damages under her denial of benefits claim, but "moving forward [she] could still be subject to terms of the Plan or operation of the Plan that violate the Parity Act." *M.S.*, 2020 WL 1692820, at *6. Thus, Denise would be entitled to relief from Defendants' violation of the Parity Act, but Section 502(a)(1)(B) may not provide her with such relief.

It is impossible for the court to know whether Denise's injuries will be adequately remedied through her Section 502(a)(1)(B) cause of action at this stage of the litigation. "[R]egardless of the outcome of the denial of benefits claim, the question of whether the Plan—or [CIGNA's] administration of the Plan—violates the Parity Act may still remain to be decided." *M.S.*, 2020 WL 1692820, at *6. Thus, "[a]t this stage, it is premature to tell what relief, if any, would be available to [Denise], much less whether granting both monetary and equitable relief is duplicative." *Christine S.*, 428 F. Supp. 3d at 1233. Dismissal is therefore inappropriate.

14

## CONCLUSION AND ORDER

For the foregoing reasons, Defendants' Motion to Dismiss Plaintiff's Second Cause of

Action is DENIED. [Docket 11].

Signed September 23, 2020

BY THE COURT

_____

Jill N. Parrish
United States District Court Judge

15